UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **TIMOTHY HUTCHENS and KAREN HUTCHENS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:13-CV-4979-B** |
| | § | |
| **SMITH & NEPHEW, INC. and BRIAN CHILDRESS** | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Timothy and Karen Hutchens' Motion to Remand (doc. 11), filed January 1, 2014. At issue is whether Defendant Brian Childress ("Childress") was improperly joined in this case. For the reasons that follow, the Court finds that S&N has failed to meet its heavy burden of showing that Childress was improperly joined and therefore **GRANTS** the Plaintiffs' Motion to Remand and **REMANDS** this case to state court.

## I.

## BACKGROUND

*A. Factual Background*

This case stems from an allegedly defective hip implant, the components of which were manufactured and sold by Defendant S&N. The device, was sold directly to Plaintiff Timothy

Hutchens ("Hutchens")[1] by S&N sales representative, Brian Childress.[2] Doc. 1-10, Pls.' First Am. Pet. ("FAP") at 1-2. As recounted in the FAP, before the hip implant, Hutchens suffered from degenerative hip disease. Pls.' FAP at 6. Otherwise an active adult, he researched hip implants to find one that would be durable and provide optimal pain relief and a range of motion. *Id.* After meeting with Hutchens's physician, and, based on information provided by S&N and Childress, Plaintiffs decided that Hutchens would undergo a total hip replacement using a BHR acetabular cup with the remainder of the system comprised of non-BHR components.[3] *Id.* On December 20, 2010, Hutchens had a cobalt-chromium ("co-cr") BHR acetabular cup, a co-cr modular femoral head, a Synergy porous plus femoral stem component, and a co-cr modular head sleeve implanted. *Id.* at 7. Plaintiffs state that a few months after his surgery, Hutchens was doing well; however, by October 2012, his condition had severely deteriorated. *Id.* He was in constant pain, fatigued, and only able

---

[1]Throughout this opinion, the term "Hutchens" is intended to refer only to Timothy Hutchens. The term "Plaintiffs" is used to refer to both Timothy *and* Karen Hutchens.

[2]The Court draws its background facts—taken as true— from Plaintiffs' First Amended Original Petition. *Manguno v. Prudential Prop. & Cas. Ins. Co.,* 276 F.3d 720, 725 (5th Cir.2002) (holding that, pursuant to Rule 12(b)(6), "all facts pleaded in the complaint must be taken as true").

[3]By way of background, hip implants, as described in Plaintiffs' FAP, are devices consisting of an acetabular cup that fits into the hip socket, and a femoral stem with a ball at its head which sits inside of the cup. Pls.' FAP at 3. "Metal-on-metal" hip implants, like the device at issue, are classified by the Food and Drug Administration ("FDA") as Class III devices. *Id.* at 4. Class III devices, Plaintiffs maintain, have to undergo pre-market approval ("PMA") by the FDA. *Id.* The PMA process involves disclosure of data and materials, as well as testing and analysis of the device before it can be approved. *Id.* Plaintiffs allege that there is a "loophole" in the PMA requirement, through the "510(k) process," which allows manufacturers to forego the PMA process if they can show that a "substantially similar" implant device has been marketed in the past. *Id.* Plaintiffs maintain that Hutchens's implants were approved under the 510(k) process with the exception of the BHR acetabular cup, which did undergo PMA. *Id.* at 5. According to Plaintiffs, in 2006, the FDA conditionally approved S&N's BHR cup for commercial distribution. *Id.* at 5-6. One of the prerequisites for this conditional approval was that the device was not to be marketed for "off-label" use, including use of the BHR cup with femoral stems other than BHR stems. *Id.* at 6.

to walk short distances with a greatly reduced range of motion. *Id.* After running tests, Hutchens's physician concluded that Hutchens had metal-on-metal hip failure due to metallosis and recommended the implants be removed. *Id.* Plaintiffs' insurance refused to pay, and Hutchens was unable to have the removal surgery. *Id.* Plaintiffs maintain that Hutchens is now largely dependent on a wheelchair, has injuries to his knee from an altered gait, shows signs of worsening metallosis, and has been essentially unable to work and support his family or enjoy life. *Id.*

Childress, an S&N sales representative, marketed, advertised, delivered, and sold hip implant devices to physicians. *Id.* at 2. Plaintiffs allege that Childress also provided product information to Hutchens's surgeons, including warnings, surgical techniques, demonstrations on proper implantation, and the "proper" combinations of S&N devices. *Id.* at 2. Plaintiffs further claim that, although not a surgeon, Childress played a "key role" in providing information to Hutchens's surgeons *during* the surgery. *Id*. They further state that Childress was actually present in the operating room during Hutchens's procedure to observe, comment on, and assist with device implantations. *Id.* at 2. Plaintiffs allege that they proceeded with the implant surgery relying on Childress's and S&N's marketing representations and were not warned of the strict requirements for the use of metal-on-metal hip implants and the prohibition for off-label combinations in this case. *Id.* at 8.

*B. Procedural Background*

Plaintiffs filed this suit in Texas state court against both Defendants on November 19, 2013, claiming severe complications, including metal-on-metal hip failure from the implant. *Id.* Plaintiffs alleged causes of action for negligence, strict products liability (manufacturing defect), strict products liability (design defect), strict products liability (inadequate warning), strict products liability (failure to conform to representations), strict products liability (failure to adequately test), breach of express

warranty, breach of implied warranty of merchantability, fraudulent concealment, intentional or negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* S&N removed the case to this Court based on diversity jurisdiction, alleging that Plaintiffs had improperly joined Childress in the suit. Notice of Removal at 1. The instant Motion to Remand followed and is now ripe for review.

## II.

## LEGAL STANDARDS

### A. *Removal Based on Diversity Jurisdiction*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004). District courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citing *Kokkonen*, 511 U.S. at 377). When a party removes a lawsuit to federal court on diversity grounds under 28 U.S.C. § 1332, the removing party must demonstrate each element of § 1332, including that a plaintiff is not a citizen of the same state as any defendant. 28 U.S.C. § 1332(a) Furthermore, an action removable solely on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007); *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (noting that any

questions or ambiguities "should be strictly construed in favor of remand").

*B. Improper Joinder* [4]

Though diversity jurisdiction requires complete diversity of the parties, a case involving a non-diverse defendant may nevertheless be removed to federal court if it is established that the non-diverse defendant was improperly joined. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). When a defendant's basis for removal to federal court is improper joinder, "[t]he party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). If the in-state defendant was properly joined, removal was improper and, consequently, the federal court does not have jurisdiction. *Id*. at 576.

To establish improper joinder, the removing party must demonstrate "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 573. Only the latter method of proof is presently before the Court. Thus, the Court must examine whether S&N has met its burden of showing that there is no possibility that Plaintiffs may recover against Childress under applicable state law. *Id.* "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal quotations omitted). In other words, "if there is even a possibility that a state court would find the complaint states a cause of action against any one of the

[4]The Fifth Circuit adopts the term "improper joinder" as "being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past." *Smallwood,* 385 F.3d at 571 n.1.

resident defendants, the federal court must find the joinder was proper and remand the case to the state court." *Triggs*, 154 F.3d at 1287 (internal quotations omitted). Nonetheless, this possibility must be reasonable and not merely theoretical. *See Great Plains Trust*, 313 F.3d at 312.

The Fifth Circuit has recognized two ways a district court may go about deciding whether a plaintiff has a reasonable basis of recovery under state law. *See Guillory v. PPG Indus. Inc.,* 434 F.3d 303, 309 (5th Cir. 2005). First, the court may conduct a Rule 12(b)(6)-type analysis to determine whether the allegations of the plaintiff's complaint state a claim under state law against the in-state defendant. *See Smallwood,* 385 F.3d at 573. Or, in *rare* instances, where the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* (emphasis added). Summary inquiries, however, must be "restrained by a tight 'judicial tether'" *Id.* at 574.

S&N refers to Childress's declaration (doc. 1-12), filed in connection with the removal papers, to establish that Plaintiffs cannot establish a cause of action against him on any of Plaintiffs' claims. Def.'s Resp. at 2-3. But Childress's declaration, which, at best, is a series of non-specific denials of involvement in the design, manufacture, and marketing of the implant devices, wholly fails to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery" against him. *Smallwood,* 385 F.3d at 573-74("... a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."); *see also Cavallini v. State Farm,* 44 F.3d 256, 264 (5th Cir.1995). Thus, the appropriate method of testing the sufficiency of Plaintiffs' pleadings is through a Rule 12(b)(6)-type analysis.

## III.

## ANALYSIS

### A. *Applicability of the Federal or Texas Pleading Standard*

In conducting its 12(b)(6) analysis of Plaintiffs' pleadings, the Court must first consider the question of whether to apply the federal or Texas pleading standard. Indeed the decision about which pleading requirements to apply is "critical to resolving the issue of [the pleadings'] adequacy." *Durable Specialties, Inc. v. Liberty Ins. Corp.*, No. 3:11-CV-739-L, 2011 WL 6937377, at *4 (N.D. Tex. Dec. 30, 2011). The parties in this case disagree as to which standard is appropriate. Plaintiffs urge the Court to follow the Texas "fair notice" requirements; S&N asserts that federal standards apply. Pls.' Mot. Remand 5-6; Notice of Removal at 8.

The Fifth Circuit has not directly addressed this issue in a published opinion. *See Yeldell v. GeoVera Specialty Ins. Co.*, No. 3:12-CV-1908-M, 2012 WL 5451822, at *1-*2 (N.D. Tex. Nov. 8, 2012). However, in an unpublished opinion, the Court of Appeals has applied the Texas "fair notice" standard. *Id.; see De La Hoya v. Coldwell Banker Mex. Inc.*, 125 F.App'x. 533, 537-38 (5th Cir. 2005). Many courts within this District have followed suit.[5] Though the federal pleading standard under *Twombly* and *Iqbal* is arguably more stringent than the Texas "fair notice" requirement,

---

[5]*See Charla Aldous, P.C. v. Black*, No. 3:12-CV-5028-G, 2013 WL 3154121, at *7 n.3 (N.D. Tex. June 20, 2013) (noting that, although "it is not necessary to determine the proper pleading standard to decide this case[,] . . . applying the state pleading standard seems most natural"); *Fantroy v. Dallas Area Rapid Transit*, No. 3:13-CV-0345-K, 2013 WL 2284879, at *4 (N.D. Tex. May 23, 2013) ("Based on this sound logic and the Fifth Circuit's application of the state standard, this Court applies the Texas pleading standard to Plaintiff's allegations"); *Landor v. State Farm Lloyds*, No. 3:12-CV-4268-M, 2013 WL 1746003, at *2 (N.D. Tex. April 23, 2013); *Durable Specialties*, 2011 WL 6937377, at *5; *Bedford Internet Space, LLC v. Travelers Cas. Ins. Co.*, No. 3:12-CV-4322-N-BN, 2013 WL 3283719, at *4 (N.D. Tex. June 28, 2013); *Arana v. Allstate Tex. Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at *3 (N.D. Tex. May 17, 2013).

"[f]undamental fairness compels that the standard applicable at the time the initial lawsuit was filed in state court should govern." *Durable Specialties,* 2011 WL 6937377, at *5. Thus, this Court will look to the Texas pleading standard to determine whether Plaintiffs have stated a claim for relief against Childress.

B. *Texas "Fair Notice" Pleading Standard*

Under Texas law," a petition shall contain 'a short statement of the cause of action sufficient to give fair notice of the claims involved.'" *Windle v. Synthes USA Products, LLC,* No. 3:11-CV-2591-D, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (citing TEX. R. CIV. P. 47(a)). In applying this "fair notice" pleading standard, Texas courts look to "whether the opposing party can ascertain from the pleading[s] the nature and basic issues of the controversy and what testimony will be relevant." *SFTF Holdings, LLC v. Bank of Am.*, No. 3:10-CV-0509-G, 2011 WL 1103023, at *1 (N.D. Tex. Mar. 22, 2011)(quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). A pleading may contain legal conclusions as long as fair notice to the opponent is given by the allegations as a whole. *See* TEX. R. CIV. P. 45(b). "Every fact will be supplied that can reasonably be inferred from what is specifically stated." *Gulf, C. & S.F. Ry. Co. v. Bliss*, 368 S.W.2d 594, 599 (Tex. 1963). Furthermore, an original petition should be construed liberally in favor of the pleader, and the court "should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Landor,* 2013 WL 1746003, at *2.

C. *Sufficiency of Plaintiffs' Pleadings*

Plaintiffs have pled twelve causes of action against Childress and S&N. Only one of these claims need pass muster under the Texas pleading standard to require remand of the entire case.

*Gray ex rel. Rudd v. Beverly Enterprises-Miss., Inc.,* 390 F.3d 499, 412 n.11 (5th Cir. 2004) (internal citations omitted). As explained below, the Court finds that the DTPA claim against Childress satisfies the Texas "fair notice" pleading standard and that remand is therefore required. Consequently, the Court declines to address the sufficiency of the pleadings as to Plaintiffs' other causes of action and turns directly to the DTPA claim.

In their the DTPA claim, Plaintiffs allege that S&N and Childress

> [E]ngaged in false, misleading or deceptive acts or practices in the conduct of trade or commerce in the following respects:
>
> (a) [by] representing that goods have characteristics, uses and benefits which they do not have, in violation of § 17.46(b)(5) of the DTPA;
> (b) [by] advertising goods or services with the intent not to sell them as advertised, in violation of § 17.46(b)(9) of the DTPA;
> (c) [by] representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law, in violation of § 17.46(b)(12);
> (d) [by] failing to disclose information concerning goods or services which was known at the time of the transaction, and such failure to disclose such information was intended to induce the consumer into a transaction in which the consumer would not have entered had the information been disclosed, in violation of §17.46(b)(24) of the DTPA; and
> (e) [by] engaging in unconscionable conduct by taking advantage of the relative economic weakness and inexperience of Plaintiffs.

Pls.' FAP at 21. Specifically as to Childress, Plaintiffs allege that "Childress, . . . exercised substantial control over the provision of warnings and . . . provided inadequate warnings, instructions, or representations to Plaintiffs that were incorrect, violated the . . . [DTPA] and induced Plaintiffs to implant the identified devices, causing Plaintiffs' harm." *Id.*

S&N's challenge to the entirety of the pleadings, including the DTPA claim, reduced to its essence, is that Plaintiffs have failed to specify any unlawful acts or representations by Childress *himself* as opposed to his actions with or on behalf of S&N. Specifically, S&N complains that

> [t]he vast majority of Plaintiffs' allegations are directed toward "Defendants" or "Smith & Nephew and Brian Childress" collectively. In a twenty-six page pleading, only three paragraphs are directed solely to Mr. Childress, and those three paragraphs merely allege in conclusory fashion that Mr. Childress "placed the hip implant into commerce," "made express representations about their use," and "exercised substantial control over the provision of warnings." [Pls.' FAP at 2, 20-21]. The Amended Petition does not allege specific facts substantiating these allegations or identifying how Mr. Childress, a distributor, could in fact exercise "substantial control" over the warnings provided by a medical device manufacturer regulated by the Food and Drug Administration ("FDA"). Nor does the Amended Petition set forth facts establishing the warranties Mr. Childress supposedly made. Plaintiffs' pleading merely parrots the elements of a cause of action against Mr. Childress.

Def.'s Resp. at 2.

S&N claims that Plaintiffs' generalized accusations are insufficient as a matter of law to sustain recovery against Childress in this case alleging a defective product, because Childress, as a

> sales representative of a medical device manufacturer regulated by the [Food and Drug Administration], cannot be held liable under Texas law unless he designed or manufactured the implant, which he did not, or unless Plaintiff can show that he provided false or misleading information outside the FDA-approved labeling. His duty under Texas law was to pass along the information he received from the manufacturer . . . Plaintiffs do not even specifically allege any such information or warnings outside the labeling . . . .

Def.'s Resp. at 3.

As to the DTPA claim in particular, S&N argues that Plaintiffs fail to identify any "'false, misleading or deceptive acts or practices in the conduct of trade or commerce' that . . . Childress actually made *independently* of the warnings provided to him by S&N." Def.'s Resp. at 7-8 (emphasis added). Reduced to its essence, S&N's challenge to the DTPA claim rests upon its earlier-stated assertion that Plaintiffs failed to allege anywhere in the FAP that Childress personally made any single false or misleading statement outside of what he was provided by S&N, and that this omission therefore dooms Plaintiffs' ability to recover against Childress. *Id.*

Plaintiffs, not surprisingly, disagree. First, they discount S&N's argument that a sales representative of a medical device manufacturer regulated by the FDA cannot be held liable for his own actions under the DTPA unless he was involved in the design or manufacture of the product or unless he imparted information that was different from the information he was provided by S&N. Pls.' Reply at 5-6. Such a legal premise, according to Plaintiffs, is flatly contradicted by Texas law. Pls' Reply at 6-7 (citing *Miller v, Keyser*, 90 S.W.3d 712, 718 (Tex. 2002) (holding that the corporate agent is liable for his own violations of the DTPA, regardless of whether he was simply passing along information from employer)). The Court agrees with Plaintiffs' assertion and notes that not only has S&N failed to submit any case authority to support this faulty proposition,[6] there is a wealth of Texas authority contradicting it. *See Miller*, 90 S.W.3d at 717 n.23 (citing *Light v. Wilson*, 663 S.W.2d 813 (Tex. 1983); *Thule Drilling ASA v. Schimberg,* 290 F. App'x 745, 747 (5th Cir.2008)).

In his concurring opinion in *Light,* Justice Spears describes the law as it stands in Texas on corporate agent liability in the context of DTPA claims, stating "[t]he rule in Texas has always been that an agent is personally liable for his own torts." *Light*, 663 S.W.2d at 814 (Spears, J. concurring) (collecting cases). This rule, Spears states, "also applies when the agent is an officer or shareholder of the principal corporation. . . . Liability in these cases is based on the agent's own actions, not his status as an agent. There is no sound reason to treat agents differently when they violate the Deceptive Trade Practices Act." *Id.* (collecting cases). Having dispensed with the

---

[6]The cases cited by S&N in support of this position are inapposite, relating to the sufficiency of the allegations against a corporate employee in a DTPA case and not whether an employee/agent is immune from liability in a products liability case under a "corporate agent theory" governing FDA-approved devices. Def.'s Resp at 6 (citing *Fantroy*, 2013 WL 2284879, at *5; *Cantor v. Wachovia Mortgage, FSB*, 641 F. Supp. 2d 602, 612 (N.D. Tex. 2009)).

foregoing challenge to Plaintiffs' pleadings, the Court turns to the issue of the sufficiency of Plaintiffs' pleadings.

The DTPA proscribes false, misleading, and deceptive acts or practices in the course of consumer transactions. *Windle v. Synthes USA Products, LLC,* No. 3:11-CV-2591-D, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)). The elements of a DTPA claim are "(1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision[7] of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury." *Id.* (citing *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 649 (Tex. 1996)); *see also Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex. 1995).

A false, misleading or deceptive act or practice under the DTPA can be any one or more of the 27 laundry-list provisions of the DTPA. *Windle,* 2012 WL 1252550, at *4. In *Windle*, the Court found that a defendant sales representative was properly joined in the case when the plaintiff alleged that the defendant engaged in several false, misleading, deceptive acts under § 17.46(a) and (b) of the DTPA, upon which plaintiff relied, and that the defendant sales representative's actions were unconscionable. *Id.* Likewise, here, as described above, Plaintiffs allege that Childress and S&N violated sections 1746(b)(5) (representing that goods have characteristics, uses and benefits which

[7]Section 17.46 of the DTPA lists 27 acts and practices that are considered false, deceptive or misleading under the Act. TEX. BUS. & COM. CODE ANN. § 17.46(b).

they do not have), (b)(9) (advertising goods or services with the intent not to sell them as advertised), (b)(12) (representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law) and (b)(24) (failing to disclose information concerning goods or services which was known at the time of the transaction, and such failure was intended to induce the consumer into a transaction in which the consumer would not have otherwise entered). Pls.' FAP at 21.

So far as the factual basis for Childress's, as opposed to S&N's, liability there is ample information in the pleadings to sustain a finding that Plaintiffs have satisfied the Texas "fair notice" pleading standard. As mentioned above, in their DTPA claim, Plaintiffs allege, referring specifically to Childress, that he "exercised substantial control over the provision of warnings and . . . provided inadequate [and incorrect] warnings, instructions, or representations to Plaintiffs . . . and induced Plaintiffs to implant the identified devices, causing Plaintiffs' harm." Pls.' FAP at 21. The "Parties" section of the FAP provides further factual context as to how Childress wielded "substantial control" over the information relied upon by the Plaintiffs:

> Brian Childress is a sales representative for Smith & Nephew, and distributed or otherwise placed, for commercial purpose, into the stream of commerce, the hip implant device components that were implanted into the body of Mr. Hutchens. Childress, as the distributor and contact point with the physicians hired to conduct the hip implant, marketed, advertised, delivered, and sold hip implant device components, directly or indirectly, including the components sold and implanted into the body of the Plaintiff, Tim Hutchens, Dallas County, Texas. This included the provision of information to Mr. Hutchens' surgeons, including but not limited to product information, warnings, surgical techniques, demonstrations on proper implantation, and the "proper"combinations of Smith & Nephew devices for implantation. Childress' role as Smith & Nephew's contact with physicians meant that he had substantial control over the warnings and information accompanying the implants, and made express representations about the implants and their use, both of which were false or incomplete and caused injury to Plaintiffs as set forth in detail below . . . Childress also observed, commented on, and assisted with device

> implantation surgery. Childress thus played a key role in the provision of information and training to Plaintiff's physician. . . .

Pls.' FAP at 2.

Drawing from the foregoing allegations, the Court can reasonably infer that Childress— and Childress alone—was the primary"contact point" and source of information for Hutchens and his doctors, in which capacity he personally imparted "false" and "incomplete" information to them regarding the device. This faulty information included warnings, surgical techniques, implantation, as well as advising on the "proper"combinations of Smith & Nephew devices for implantation. Further substantiating Childress's extensive personal involvement with Plaintiffs and their surgeons is the allegation in the FAP that Childress was actually in the operating room "observ[ing], comment[ing] on and assist[ing] with . . . [Hutchens's] . . . [actual] surgery." Pls.' FAP at 2. Such detail regarding Childress's role soundly puts to rest S&N's arguments that Childress cannot discern the factual basis of the claims against him.[8]

In conclusion, the FAP offers a firm factual basis to support Plaintiffs' DTPA claims that Childress engaged in unconscionable conduct by making false representations and failing to disclose material information about the implant which induced Plaintiffs to proceed with the ill-fated surgery. Where there is a reasonable possibility that the plaintiffs can recover against the resident defendant on any one of their claims, the case must be remanded. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 n.8 (5th Cir. 1981) ("if there is even a possibility that a state court would find a

---

[8] S&N's reliance on Childress's declaration to refute the allegations against Childress in the FAP, is unavailing given that the Court has already found the declaration inadequate to trigger a summary-type analysis of the pleadings. In any event, the declaration is so wanting in detail, it is simply not up to the task of rebutting the specific allegation against Childress in the FAP.

cause of action stated against any one of the named in-state defendants . . . then the federal court must find that the in-state defendant(s) have been properly joined"). The Court concludes that S&N has failed to meet its heavy burden of demonstrating that there is no possibility that Plaintiffs can recover against Childress on their DTPA claim

Although not specifically directed at Plaintiffs' DTPA claim, S&N argues that as a sales representative, as opposed to a manufacturer, Childress cannot be held liable under Texas law on any of Plaintiffs' claims. Def.'s Resp. at 5 (citing TEX. CIV. PRAC. & REM. CODE ANN. §82.003).[9] In making this argument, S&N relies upon § 82.001 of the Texas Civil Practices and Remedies Code, which precludes recovery against non-manufacturing *sellers* of products— like Childress—*unless* one of the exceptions to the general rule found in § 82.003(a) applies.[10] *Rubin v. Daimlerchrysler Corp.,*

---

[9] The Court assumes, based on the available authority, that § 82.001 applies to DTPA cases involving product liability claims. *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (DTPA claims involving products are covered by § 82.001 ).

[10] Section 82.003 provides:
(a) A seller that distributes a product, without participating in its manufacture, is not liable for harm caused to the claimant by that product unless the claimant proves:
(1) that the seller participated in the design of the product;
(2) that the seller altered or modified the product and the claimant's harm resulted from that alteration or modification;
(3) that the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product;
(4) that:
(A) the seller exercised substantial control over the content of a warning or instruction that accompanied the product;
(B) the warning or instruction was inadequate; and
(C) the claimant's harm resulted from the inadequacy of the warning or instruction;
(5) that:
(A) the seller made an express factual representation about an aspect of the product;
(B) the representation was incorrect;
(C) the claimant relied on the representation in obtaining or using the product; and
(D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;
(6) that:

2005 WL 1214605, at *6 (S.D. Tex. May 20, 2005) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 82.001 and 82.003). S&N maintains that none of the exceptions apply to Childress. Def.'s Resp. 6. The Court disagrees.

Section 82.003(a)(4) provides an exception to the liability bar where, despite not manufacturing a product, a seller "exercised substantial control over the content of a warning or instruction that accompanied the product *or* that the warning was inadequate." TEX. CIV. PRAC. & REM. CODE ANN. §82.003(a)(4). As mentioned above, Plaintiffs allege in the DTPA section of the FAP that Childress "exercised substantial control over the provision of warnings and . . . provided inadequate warnings, instructions, or representations to Plaintiffs that were incorrect, violated the . . . [DTPA] and induced Plaintiffs to implant the identified devices, causing Plaintiffs' harm." Pls.' FAP at 21. This language sufficiently alleges the § 82.003(a)(4) exception to the Chapter 82 bar to seller-liability.

S&N attempts to circumvent the (a)(4) exception by relying on Childress's declaration. Nonetheless, as mentioned, the contents of Childress's declaration is of no moment to this 12(b)(6) analysis and is otherwise too conclusory and bereft of detail to be of any assistance to Childress's argument. Accordingly, S&N's § 82.001 argument lacks merit, and S&N therefore fails to show that there is no reasonable basis upon which Plaintiffs could recover against Childress under Texas law.

---

> (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and
> (B) the claimant's harm resulted from the defect; . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003.

*D. Impossibility Preemption Defense*

The Court next considers S&N's argument that the case is not subject to remand under a theory of "impossibility preemption." More precisely, S&N argues that it is not possible for Childress to comply with state law requirements to give different or greater warnings regarding the risks of the BHR acetabular cup than those which are approved by the FDA without running afoul of federal law. Def.'s Resp. at 12. Specifically, S&N maintains that if Childress had given different or greater warnings, he would have violated the FDA's misbranding regulations under 21 U.S.C.A. §§ 331(b) and 352(a)-(c). *Id.* In support, S&N submits authority establishing that a distributor of prescription drugs cannot independently change warnings that are required as a matter of law under the FDCA and FDA's regulations. *Id.* 12-13.

Plaintiffs state in their Reply that impossibility preemption[11] does not apply because none of the devices—save the BHR cup—have federal requirements. Pls.' Reply at 9. Plaintiffs similarly contend that their claims based on the BHR Cup parallel specific federal requirements for that device, and are therefore not preempted. Pls.' Br. at 16. Plaintiffs further maintain that S&N's preemption argument violates the common defense rule, and can therefore not serve as a basis for finding improper joinder. Pls.' Reply at 9.

Impossibility preemption applies when a private party could not independently do under federal law what state law requires of it. *PLIVA Inc. v. Mensing,* 131 S. Ct. 2567, 2577 (2011). The

---

[11]In their Motion to Remand, Plaintiffs mistakenly assume that S&N is raising an express rather than implied preemption defense. Def.'s Resp. 12-17. In doing so, Plaintiffs cite medical device cases such as *Riegel v. Medtronic* and *Bass v. Stryker*; however, both of these cases only involve express preemption and not impossibility preemption. *Id.* at 13; *see Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008); *see Bass v. Stryker Corp.,* 669 F.3d 501 (5th Cir. 2012). Thus the Court does not examine Plaintiffs' arguments regarding express preemption.

Supremacy Clause of the United States Constitution requires that state law give way where it conflicts with federal law. *Id.* at 2579. "Impossibility [preemption] is a demanding defense." *Wyeth v. Levine*, 555 U.S. 555, 573 (2009). Unless there is clear congressional intent to the contrary, courts begin with the presumption that federal law will not supersede traditional police powers held by the state. *Medtronic, Inc.*, 518 U.S. at 485.

S&N's attempt to rely on impossibility preemption as a basis for denying remand is not persuasive under the circumstances of this case. S&N's argument that Childress could not have given more or additional warnings without violating FDA regulations is inapplicable here with regard to the DTPA claim—where Plaintiffs do not suggest Childress should have provided additional or different warnings, but that he did not disclose the proper ones or construed them in a misleading way. *See Elmore v. Gorsky*, No. 2:12-CV-00347, 2012 WL 6569760, at *3 (S.D. Tex. Dec. 17, 2012) (holding that conduct taken to advance off-label use of a drug did not fall within the concept of the regulation of labeling as to warrant impossibility preemption); Pls.' FAP at 21. Therefore, the Court finds that compliance with the DTPA would not have required violation of the FDA misbranding regulations as S&N argues it would.

Additionally, the Court notes that even if S&N's preemption argument did apply to Plaintiffs' claims, it would be barred by the common defense rule. The common defense rule provides that when a showing "that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder." *Smallwood*, 385 F.3d at 574 (quoting *Chesapeake & Ohio R.R. Co. v. Cockrell*, 232 U.S. 146, 153 (1914)). Assuming that S&N's arguments that it would be impossible for Childress to provide warnings different from or in addition to the

warnings approved by the FDA were well-taken, the same arguments for preemption would necessarily extend to the Plaintiffs' claims against S&N, against whom Plaintiffs allege very similar claims. *See* Pls.' FAP at 20-21. Accordingly, S&N's argument that the claims against Childress are conflict preempted under federal law must necessarily fail and Plaintiffs' Motion to Remand must therefore be **GRANTED**.

## IV.

## CONCLUSION

For the reasons stated above, removal was improper and Plaintiffs' Motion to Remand is **GRANTED**. This case is **REMANDED** to the District Court of the 44th-B Judicial District of Dallas County, Texas, for further proceedings.

**SO ORDERED.**

**SIGNED: August 22, 2014.**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**